Good morning, Your Honor. Devin Burstein, Federal Defenders of San Diego, for Mr. Chovan. The lights are dimmer. Can you see all right? I can see all right, Your Honor. I think also because of the cloud cover. It's a little dark in here. Cloud cover. Yes. Go ahead. Thank you. Your Honors, the right of the people to keep and bear arms shall not be infringed. While this right may not be absolute, in Heller and McDonald's we're told that it is personal, is fundamental, and protects above all else the ability to keep firearms in the home for self-defense. Section 922G9 substantially and unconstitutionally burdens that right, both on its face and as applied to Mr. Chovan. Prior to this case, Mr. Chovan had one misdemeanor conviction from 1996, and his right to bear arms was restored under California law. Counsel, let me direct your attention to that. Chovan was convicted of inflicting corporal injury on his spouse August 15, 1996, right? Right. One of the automatic terms of conviction was that he not possessed a firearm for 10 years. Correct. That was automatic, and it lasted for 10 years, and so therefore on August 15, 2006, it no longer lasted, right? Absolutely. Now, the federal law says that when your civil rights have been restored to you, the misdemeanor conviction, and I don't know if my Latin is correct, or somehow by some legal operation, no longer exists. You weren't convicted of a misdemeanor. Right, definitionally. So, if that's so, when Chovan was found with a gun on April 15, 2010, regardless of whether he was home, regardless of whether there was Second Amendment, regardless of any of that, he hadn't been convicted of a misdemeanor. Right. Isn't that the end of this case? Well, it should be, Your Honor, and we make that point in our brief, that his civil rights were restored as a matter of California law. And that had the effect under California law of saying he had not been convicted of a misdemeanor. That's right. He no longer fit, Your Honor, within the definition of misdemeanor crime of domestic violence set forth in 1894. Without going into Heller and McDonald and the Second Amendment and all those developing concepts of constitutional law, we have a pretty clear basis of saying you win. Absolutely, Your Honor. We would certainly be happy to win on that basis. It's been our position all along. It's kind of fun to argue these Second Amendments. It certainly is, Judge Hoffman. It is a lot of fun. All right. Plan B. Okay. Assuming that you disagreed that his rights were restored, and we firmly believe that his rights were restored under California law. We've maintained it the whole time. But if we had to turn to a Plan B and we had to go into the very fun world of the Second Amendment and its burgeoning rights, our view would be that the government has not met its burden under heightened constitutional scrutiny to establish that 922G9 is constitutional, both on its face and certainly as applied to Mr. Chauvin, a man with one 1996 misdemeanor conviction whose civil rights were restored under California law. So turning to that, I think the first question for this Court would be what level of scrutiny to apply. Let me ask you one other question, Mr. Bersin, and refresh my recollection. When Mr. Chauvin was arrested, was the gun in his possession in his home? Yes. So it was a residential possession. Yes. And his declaration makes clear that they were kept in his home for the primary purpose of self-defense and for hunting. And he's the... What type of a firearm was involved? There were several firearms. One was an inoperable antique, but that wasn't included in the indictment, I believe. And there were two rifles. What was it? An inoperable antique gun. They were from his stepfather. His mother asked him to hold them from his stepfather, most of them. And I think there was one handgun that he said was his. I think there were two rifles and a handgun, and I can double-check. But so then he filed a declaration saying they were kept in his home for the primary purpose of self-defense. Right. And they were kept there. He'd had them for some amount of time. It's unclear from the record how long he'd had them, but certainly hadn't done anything. There had been no misbehavior with those guns. The videos the government submitted shows him shooting them on his property, which is maybe the essence of the Second Amendment protection, being able to keep them on your own property. So it's our position. So you're adding the word shoot to the Second Amendment? No, to keep and bear arms. Keep and bear and shoot. Well, I think what would be the point of being able to keep and bear if you weren't allowed to use them on your property? I mean, it wouldn't make a whole lot of sense to let somebody have a gun if they couldn't ever use it. And we're left with a situation where somebody who, under 922 G9, somebody who does something terrible or bad at a young age, and then they become a grandfather and are prohibited by federal law from teaching their grandchild to shoot or to hunt. Or we're left with a situation where, God forbid, there's a domestic dispute, and both the woman and the man are involved, and she also winds up with some type of conviction. And then she's not allowed for, you know, ever, forever and ever. It might even be a same-sex couple. It might even be a same-sex couple. It doesn't really matter. But the point is that person is then prohibited forever and ever from possessing a firearm for self-defense, the core reason identified in Heller. And that's the situation we have here. We have just one misdemeanor conviction. So we're turning to. Was the handgun registered? No, it was not. Was registration required under California law? I assume so, but I'm not sure. But, again, the firearms that he had in his home were largely, according to the record, his stepfather's. That doesn't mean anything. Well, I don't know if they were registered to him, Your Honor, is solely what I'm getting at. Or registered at all. Or registered at all. I simply don't know. So the question becomes whether, and what's open going down this line, is whether this Court is going to apply strict scrutiny or intermediate scrutiny to this type of infringement. It's our position that, given that it is an enumerated constitutional right, and a total burden, a substantial burden in that it is a total prohibition, that this Court should apply strict scrutiny. And we think that support for that is found in Supreme Court cases like Burdick, Zablocki, Washington State Grange, which all suggest that when there's a severe burden on an enumerated constitutional right, strict scrutiny is the appropriate level at which to consider it. But we think that even if this Court were to follow some of the other circuits and apply intermediate scrutiny, we would prevail in this case because the government simply has not met its burden. Unlike some of the other cases, there were no reports, no scientific studies, no statistical evidence in the record before this Court. Also, we haven't had to... As to what? As to what? As to recidivism rates, the types of things that Skoyan cites to and recently Staton cited to. None of those reports are in the record. And frankly, we haven't had a chance to... I haven't even had a chance to see what the government would rely on if they were relying on statistical evidence and then to rebut it. But unlike those other cases here, we did provide our own statistical evidence, mostly by the Sentencing Commission, showing that under their empirical studies, the most relevant consideration for recidivism risk is criminal history points. That's what they determined. Mr. Chauvin, at the time of his conviction in this case, had zero. Under the Sentencing Commission's judgment and their empirical research, he posed relatively no recidivism risk, and we cited them all in our brief. And so... So if the statute, the statutory bar here were for one or two or three years, you think that would be okay? I don't necessarily think that would be okay, but we'd have a much more difficult argument. If it was more akin to California's law, a ten-year prohibition or a limited prohibition, I think where this law is unconstitutional under any stretch of the imagination is that it is a lifetime prohibition. And there's no court who has considered 922G9 under facts similar to this. In fact, even Scoian says, whether a misdemeanor who has been law-abiding for an extended period of time must be allowed to carry guns again, even if he cannot satisfy 921, is a question not presented today. There will be enough time to consider that subject when it arises. Well, it has risen. Mr. Chauvin is that defendant. I'd be happy to answer further questions or to save the remainder of my time for rebuttal if the panel doesn't have any further questions at this moment. Thank you. Thank you. Good morning. Caroline Han on behalf of the United States. Your Honor, today the government is asking you to find that 922G9 is a presumptively lawful regulatory measure along the lines of 922G1 as the panel of this Court found in Bonge and 922G3 as a panel of this Court also found in Dugan. I know your opponent started with the constitutional issue. But Judge Bea, I think, properly directed him back to what I would describe as the top of the first inning, and that is, does he fall within the exception? Has his civil rights been restored? And if so, do we need to get to the Second Amendment issue? Why don't you start with that? Of course, Your Honor. Your Honor, the defendant's rights have not been restored at all. If you look at section 921A33, it calls for incidents where the conviction has been expunged or set aside or is an offense for which the person has been pardoned or has had civil rights restored if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense unless rights expressly provides that person may not ship, transport, possess, or receive violence. The rights we normally talk about are the right to vote. Exactly. The right to hold public office. The right to serve on a jury. And I suppose your learned counsel and opponent would add the right to bear arms. Exactly. At the time of Chauvin's conviction, and as a result of the conviction, did he lose the right to vote? No, he did not. Did he lose the right to serve as juror? No. Did he lose the right to hold public office? No. The only thing he lost was the right to bear arms. Exactly. Keep and bear arms. Yes. And that dissipated upon the 10-year limit, correct? That is correct. Under California law, that did dissipate. However, if you look at California's. So he never lost the first three. And the only one he lost was automatically restored to him upon 10 years, correct? Exactly, Your Honor. So if he had gone to a superior court in California and said, I want a document saying that I have a full restoration of civil rights, wouldn't a California court say, you already have them? Well, Your Honor. What do you need us to say that for? Well, Your Honor, the court actually could not have done so, because under California Penal Code 1203.4 and 1203.4a, my understanding is that those two provisions specifically allow for the fact that it does not preclude, even though someone's rights can be restored or they can seek to have their conviction expunged, it does not preclude them from being prosecuted under Federal statutes. So that actually is not something that he could seek. He never sought any such non-protunct order, unlike the defendant in Jennings v. McCase. But he doesn't have to seek. I happen to have, in a prior life, used 1203.4, and you do need a court order to expunge a conviction. But Mr. Chauvin didn't need a court order because his inability to carry a firearm was automatically restored him by operation of law. If he were to go into a court and say, I want to have my right to carry a gun restored to me, a judge who was informed would say, petition denied for being moot. You already have it, right? But, Your Honor, our point is that even if he had had an order that said he had the right to, that his right to possess a firearm under California law was restored, that that does not preclude him from being prosecuted under Federal law. And this is why. This is because under the cases of Karen and Valerio, the issue of what it means to restore your rights. No, no, no, no, no, no. This statute says that after 10 years, the effect is that you were never convicted of the crime. Not that the crime was expunged, right? But that you were never convicted. It's as if you were never convicted. It's meant by operation of law. So, therefore, if you were never convicted of a misdemeanor of domestic violence on the date when he was found in his home with a gun, he had never been convicted. Your Honor, I believe that that's an issue that a panel of this court had taken up in Jennings v. Mukasey. And that is not at all what that particular, what their interpretation of what the statute called for. Specifically, I believe that they denote that the statute did not, that the sections 1203.4 and 1203.4A do not provide the kind of relief that that particular appellant had been seeking. Indeed, they specifically provide that a conviction such as Jennings received may be used in any subsequent prosecution and that persons may still be prosecuted under state firearms laws. So that is an issue that has been resolved already by a panel of this court. So what you're saying is that my reading so far is wrong because a panel of this court in Jennings has said I was wrong and we have to follow Jennings. Yes, Your Honor. All right, I understand that. What's the citation on Jennings? Your Honor, the citation on Jennings is 511-538-94 and my particular 894? Yes, Your Honor. And my particular citation that I read from was page 901. All right, thank you. Will you give us a gum sheet? I'm sorry? Give us a gum sheet. The clerk will help you with it. Yes, Your Honor. Okay, thank you. This is not in your brief, correct? Your Honor, I do believe that Jennings v. McCasey was cited in my brief. Well, it is in the brief. I do believe so, yes. Okay. Well, actually, technically, you don't have to do it, but it's nice if you will. Absolutely, Your Honor. Okay, thanks. And with Your Honor's permission, I will move on to the Second Amendment Heller issue. As I was stating, we do believe that it is a presumptively lawful regulatory measure, and while it's not enumerated in Heller like G-1, the Felon in Possession statute, and it's not – it has a more permanent restriction than the drug problem restriction that was addressed in Dugan, we actually think that it's more significant and more appropriate because, in fact, it includes an element which includes the use or attempted use of physical force or the threatened use of a deadly weapon. And although it's clear from history that domestic violence misdemeanors were not contemplated at the time of the founding of this country, certainly there is history and there is evidence that people who were perceived to be dangerous were restricted from possessing firearms. For example, in the 1662 Militia Act, the militia was allowed to disarm people who it found to be dangerous to the peace of the kingdom. Also, in colonial Pennsylvania, those who refused to take a loyalty oath could be disarmed. Moreover, Your Honors, in the Court's recent decision in Bonge Che, the Court – a panel of this Court had found that the right to bear arms was one that was reserved for law-abiding citizens. Mr. Chauvin is not that person. We believe that he falls outside of the Second Amendment protection and does not have any protection under the Second Amendment. However, should this Court not agree with us that he – or believe that he does have some protection under the Second Amendment, he does not fall within that core right that was contemplated by the Heller Court because he is not a law-abiding responsible citizen who was using arms in the defense of his hearth and home. Appellant's counsel had talked about how those firearms were in his home, and that's correct. He was charged with possessing a shotgun, a rifle, and a handgun, and there were multiple other firearms that were antique firearms that he was not charged with possessing. However, Your Honor – He did not fall within that core right because he had been convicted of a misdemeanor 10 years before, and he is the danger of recidivism? Is that what your point is? Yes. He is of that class of people who historically have been restricted because they're thought to be dangerous by the legislature to – from possessing firearms. Do you have any cases which indicate that in colonial times misdemeanors who were guilty of domestic violence were barred from the use of guns? No, of course not, because, Your Honor, domestic violence was – What's the most recent case that you can cite for that proposition? Other than this. That people that were dangerous were – No, the people – misdemeanors, not felons, but misdemeanors were barred from the use of guns. At the time of the founding of the country? Or after that. Domestic violence misdemeanors, obviously there have been cases recently in the Fourth, Seventh, Tenth, and Eleventh and First Circuits that have all found that those who have been convicted of misdemeanor crimes of domestic violence, that there is a reasonable fit between the statute and the substantial government interest. Most recently, or most significantly in the case of Booker, which is the most like this case, in that one of those defendants, actually, it had been eight years in between the time of his conviction and when he was actually found to be shooting a gun for hunting purposes. In that case, in the district court, the government had as well not presented the kind of statistical evidence that the appellant seeks. However, in that case, in Booker, the First Circuit found that it could rely on the findings that had been presented before the scoring courts, before Chester, and it could also rely on the findings that had been made in Congress as well, specifically to the statements that had been made by Senator Lautenberg about the need for the statute. And in so finding, they found that they had had enough evidence presented that there was, in fact, a reasonable fit between the statute itself and the substantial government interest. Can we go back? Is James versus Newcasey? Newcasey, yes, Your Honor. I'm looking at your red brief filed September 22nd, 2011. It's got your name on it. I'm looking at the table of authorities, and I don't see the case. Yeah. I apologize for that. I did believe it is among the cases that I had perhaps prepared for this case, but that is, I did not include it in my brief. Okay. So I'll cross out my note that says cited in brief. Right. Yes, please, Your Honor. I apologize for that. Did you file a 28-J letter? I did file a 28-J letter, but not on that particular case, Your Honor. So this is the first time where we've been brought, this case has been brought to our attention. Right, Your Honor. But this particular issue had also been, this particular issue had also been raised before in, for example, in Valerio, you know, a statute that has very similar language, the 921-820 statute that essentially calls for. Did Valerio cite Jennings? No, Your Honor. Valerio. Why are you mentioning it? Why don't you just say, I didn't cite it. I'm sorry. I made a mistake. This is the first time anybody has heard about the case except me. That's the situation, right? Well, certainly others have read the case before, but yes, Your Honor, I do apologize for not citing it in my brief. Yes, Your Honor. You got two now. Okay. I do believe I'm just on the one. Yes, Your Honor. Your Honor, Your Honor, moving on to the issue of whether or not the appellant's Second Amendment rights are substantially burdened, again, as we stated before, we do not believe that he has any rights under the Second Amendment. However, if this Court finds that he does have some rights under the Second Amendment, we do agree that his rights are substantially burdened by this particular statute, and we urge you to apply intermediate scrutiny and not strict scrutiny in that he is not within the core that was contemplated by Heller, and all of the courts that have applied any level of scrutiny to any of the 922G offenses have applied the intermediate scrutiny analysis. And so we urge you to apply that analysis and find that we've met our burden of reasonable fit between the statute and the substantial government interest based on the findings of your fellow courts as well as legislative findings. Are there any other questions? No questions. If you had to summarize your argument in one minute, what would you say? I'd say that his rights were not restored specifically to the issue that was raised today by Judge Bea, that his rights were not restored in that he only had one particular right that was taken away, which is the right to possess a firearm. And the case law has demonstrated when they analyzed the restoration of civil rights that all four of those civil rights are something to be taken into account. And so based on that and prior case law, we do not believe that his rights were restored. In addition, we, under the Second Amendment, we do not believe that he falls within the core of the right that was determined to be found in Heller and that in light of that, if announced the intermediate or some scrutiny is to be applied to the statute, that intermediate scrutiny should be applied and that we have demonstrated that there is, in fact, a substantial fit between the statute and that substantial government interest based on the findings of your sister circuits as well as the legislative findings, many of which we cited in our brief. Thank you. Going right to the restoration of civil rights argument, this is obviously the first I've heard of Jenny's too, but going back to the best of my ability, I believe you're going to find that it is not on point and doesn't speak to, I believe, to your Honor's point, Judge Bea. I think it's about the expungement statutes under California law, I believe, and what your Honor keeps mentioning is, and I'm getting it, is the 922 language that says, a person shall not be considered to have been convicted of such an offense in this chapter. You're not, I believe you're not going to find that answer in Jenny's. Well, we'll give you the opportunity within, say, five days, if you can, to respond to that citation. I will file a 28-J. I will file a 28-J. I see the difference between 1203.4 and what you've just read me. 1203.4, the state of California says your conviction has been expunged. But in this situation, the federal government says you have not been convicted. It changes the definition, and you're not going to find that answer, I'm almost certain, in Jenny's. I will certainly file a 28-J, but I'm almost certain that, Judge Bea, that you're absolutely right. I'm so seldom absolutely right. Well, I'm very hopeful that you are absolutely right in this case. That goes to the issue of the statute. But if he's not, you're delighted to argue the Second Amendment. I'm delighted to argue the Second Amendment, especially in this case. But I think just one more point on the restoration is that the only case that really matters would be Valerio. And Valerio, it simply says that, in that case, it says there's no civil right to be more relevant to future dangerousness than the right to possess firearms. It says in that case that that was not enough. But there's a big but there. That was not enough. And the Court holds that Valerio's right to serve on a jury and his right to hold public service have not been restored. And that was the basis. He didn't get those rights back. So that was the basis of the decision there. And as Judge Bea and the rest of the panel has made clear, here Mr. Chauvin was in the exact same position once his ---- You can't restore what you didn't lose. Right. But he did restore he did lose a core right, a right now applicable to the States to the 14th Amendment. And that right, which Valerio says is there's nothing more important, that was restored. Turning to the Second Amendment in the brief time I have left, counsel for the government has kind of conflated two of her arguments. First she says that he's outside the scope of the Second Amendment, not within the Second Amendment umbrella. And then she cites a number of cases to you from a variety of circuits. But they haven't held that. A few of them have made the mistake of following the kind of thing that says a misdemeanant is a felon and therefore hellers DICA or even if it was part of the holding controls. But Scoian doesn't do that. Chester doesn't do that. These cases, they take a look and they say, look, he has some ---- there's no historical justification for a misdemeanant. They say heller didn't speak to misdemeanants. Scoian's language on it is particularly relevant. They say that there's no point in parsing the language. We do not think it profitable to parse these passages of heller as if they contained an answer to the question whether 922G9 is valid. They are precautionary language. Instead of resolving questions such as the one we must confront, the justices have told us that the matters have been left open. The Fourth Circuit says that. The Tenth Circuit in the least of dissent has said that. All the reasoned opinions say that this is open. It's open now before this Court. We would urge this Court to, as the government has conceded, find it a substantial burden, 922G9, Mr. Chauvin's rights under the Second Amendment, to apply strict scrutiny and to reverse. And even if you apply intermediate scrutiny as applied, at the very least, send it back for the government to meet its burden, for there to be a hearing, for allowing me to address the studies mentioned in Scoian. So we would ask you in either circumstance to vacate the conviction. Well, you know, the right to bear arms is certainly subject to limitations. Yes, Your Honor. Right? And how would you draft a statute that would preclude an individual who has been guilty of threatening a spouse or a domestic partner with a weapon and has inflicted bodily harm on that other person from being precluded from ever possessing a firearm? Well, it's in that last couple of words that we run into the Second Amendment problem. Well, I'm saying you're the draftsman. Right. I mean, you can work both sides of the street. Now, how would you draft that statute? Your Honor, it's a question I've thought a lot about. And I'll tell you what a statute that I think gets a lot closer to being constitutional under the Second Amendment but has significant problems but gets a lot closer, if I can somewhat dodge your question a little bit there, would be California's 12021. Which has a 10-year ban. Which has a 10-year cap and says, you know, look, if someone's convicted of another crime within that 10 years, they're going to get another 10 years or an indefinite if they're a felon, at least under current law. But at least there's a cap. At least it doesn't take the 18-year-old who does a stupid thing and say, I don't care if you're 65, 85 and want to take your grandkid hunting, sorry, no dice. That is too much. That's when we have a specific enumerated right. Certain legislative options are taken off the table. Well, what about a person who, with that background in history, who has the right restored automatically but who commits the offense of not having that weapon registered?  You've got a handgun, you've got to go down to the sheriff or the police and register. That person doesn't do that. Well, that person will then have to deal with the consequences for that particular infringement. But that doesn't speak to the question of whether or not he or she has a second. I mean, the Second Amendment doesn't condition itself. Well, let's say one of the conditions is that that person has to register that. Now I'm following you. Yes. I mean, perhaps something like California's with a registration requirement. If they don't, then that right is not restored. Perhaps there's something like that. I don't know exactly how that would be drafted. But certainly that is a lot more narrow than a life sentence. You know, we have an example here of a situation that's much more extreme with this individual who's down at the border with rifles trying to keep people from crossing and, you know, all the rest of it. Well, that, I think, is important. It's like a posse comitatus or whatever it's called. Well, I think that's an important distinction to draw, and that's another thing that's conflated in the government's brief somewhat. There's no evidence that Mr. Chauvin had guns down by the border. The government puts it in the same sentence. They say he was shooting guns on his property and recently on border patrols, as if those things were united, but they are certainly not. The videos speak for themselves. There's no evidence that he was shooting guns down by the border.  Or that he had guns down by the border. There's no evidence that he had guns down by the border. The only evidence is that he had it on his property. The Court has no further questions. I just ask you to vacate the conviction. Thank you, Your Honor. Thank you, Your Honor. He had the guns on his property, but he wasn't firing the guns on his property. He lived in rural San Diego County. The videos show him engaging in target practice. And there's no prohibition on that? None that I'm aware of. Target practice on his own? He didn't have a rifle. He had a rifle. He didn't live in L.A. County. And if you fired at a bird, you committed an offense. Well, I think he was firing at... He probably fired at a dog. Yeah, I think there may be a little bit more freedom allowed for rural San Diego County residents if they want to shoot cans or signs in their backyard or targets. I think there's no problem with that. Well, that's with a pellet gun. Well, I don't think there's a restriction. I don't believe there's any restriction on what he is actual. If he had been me and I had had them, I don't think there would be any problem with me engaging in target practice. Thank you. Well, maybe you can check that out and let us know. The target practice issue? Yeah, with... With the .28 J? With bullets. With bullets, okay. On BBs or pellets. Okay, I'll look into that. Okay. All right. Thank you. Thank you. We'll have to call for the next matter. Okay. Imperial County Air Pollution Control District versus U.S. Environmental Protection Agency. All right. Good morning, Your Honor. Good morning. Thank you. May it please the Court. I am David Salmons on behalf of the Imperial County Air Pollution Control District. Let's give counsel a chance to put her purse away and get her pen out. Okay.
judges: Pregerson, Hawkins, Bea